**UNION CARBIDE & CARBON CORP. v.
GRAVER TANK & MFG. CO.,
Inc. et al.**

**Civ. No. 607.**

United States District Court
N. D. Indiana, Hammond Division.
Nov. 26, 1951.

George Beamer, South Bend, Ind., John Cahill, New York City, Richard R. Wolfe, Chicago, Ill., for plaintiff.

L. L. Bomberger, Hammond, Ind., John F. Oberlin, James R. Stewart, Thomas V. Koykka, Cleveland, Ohio, for defendants.

DEWEY, District Judge.

The foregoing action has been pending in this court for some time under the caption of the Linde Air Products Company, plaintiff, against Graver Tank & Mfg. Company, et al. There has been tried and determined the question of validity as to what is known in the record as the Jones et al. Patent No. 2,043,960. The trial judge determined and found that the patent was valid and had been infringed by the defendants, other than the individual defendant, and made and on July 10, 1950, filed his injunction wherein it was adjudged and decreed, that the defendants, their officers and agents be and they are enjoined and restrained from making, using, advertising or selling welding compositions and fluxes covered by claims number 16, 20, 22 and 23 of the Jones et al. patent.

The plaintiff above named has now filed a motion to adjudge the defendants named above in contempt of court for having violated said injunction. Said motion was filed in this court on the 1st day of December, 1950, and is supported by an affidavit signed by R. E. Cornwell, averring that defendants have ever since the entering of the injunction, of which they had due knowledge and notice, manufactured and sold commercially what is known in the record as the Lincolnweld 700 Series and desig-

nated as Lincolnweld 770, 780, and 760, and by an amendment that includes the Lincolnweld 840 flux, which it alleged also to have been commercially manufactured and sold by the defendants. Mr. Cornwell in his affidavit in substance avers that the defendant Lincoln Electric Company has deliberately copied the fluxes defined in the Jones et al. patent. To this motion, supported by the affidavit of Mr. Cornwell, the defendants have filed an answer denying the allegations set out in the affidavit and motion, and state that they have not in any way whatever been in contempt of said injunction, but have faithfully, fully and punctiliously obeyed and abided by its terms. This answer goes into detail as to the reasons why the defendants have not violated the court's injunction and it asks that plaintiff's motion be dismissed with costs and attorney fees charged against the plaintiff. This answer was filed on February 10, 1951, and by permission of court an amendment to said answer was filed on October 26, 1951.

The motion of the plaintiff that the defendants are in contempt of court for directly or contributorily violating the injunction is limited to the question as to whether or not the injunction has been violated by the manufacture and sale of these Lincolnweld fluxes or by contributing thereto.

The patent in suit has to do with the advancements of electric welding. The first sentence of the patent reciting, "This invention relates to electric welding."

██ The trial of the original case was reviewed by the Court of Appeals of this Circuit, Linde Air Products Co. v. Graver Tank & Mfg. Co., 7 Cir., 167 F.2d 531 and by the Supreme Court of the United States. It was definitely determined, and this Court now finds, that not only had the patentees invented something patentable over the prior art in electric welding, but that such invention was an outstanding contribution to, and an important improvement in, the art of electric welding. The Jones et al. invention is so broad and teaches so many new and additional features regarding electric welding that it seems to me the patent itself transcends in importance the

compositions which are set out in the claims of the patent, and that the claims are in truth subordinate to the invention shown by the patent. However, the defendants claim that their compositions are substantially different from the claims which were held valid in the former proceedings, and consequently the patent is not infringed.

The advancement in the art is carefully set out by Judge Swygert in his original opinion reported in Linde Air Products Co. v. Graver Tank & Mfg. Co., D.C., 86 F. Supp. 191, so that it will be unnecessary for me again to set it out here. The law governing the case especially on the question of equivalents is set out by Justice Jackson in his discussion of this case in 366 U.S. 271, 69 S.Ct. 535, 538, 93 L.Ed. 672 and 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097.

The defendant Lincoln Electric Company has complimented the plaintiff by copying the teachings of the patent. The plaintiff in its final argument has succinctly set out the similarity in the results obtained and the method of their welding and from the evidence and the demonstrations shown by it during the trial established that the appearance of the fluxes of the defendants, to wit: the Lincolnweld 770, 780, 760 and 840 are practically the same as the compositions made up from plaintiff's patent. They are all granular, free-flowing materials. They can all be fed in the same way from a hopper into the seam to be welded. They all have practically the same sizes and the same feel to the touch and are similar in color. They are all "finely divided, unbonded" compositions. The use of the so-called binder of sodium silicate may make the particles adhere, but not sufficiently to destroy the description of the particles as being unbonded within the meaning of that term as used in the claims of the patent. They are not bonded in the sense that they cannot be used as an unbonded composition.

The physical set up is practically the same.

The operating conditions are practically the same. When a plate of some selected thickness is being welded the same values can be and are used for the Lincolnweld series as for a weld made from the claims

392

of the patent in suit. And this in respect to the travel, speed and the voltage or current.

The appearance during the welding action is the same.

The finished weld is the same.

During the weld both compositions are practically free from gas and moisture. It may be said, in general, that each of the 700 series of defendant's fluxes operates substantially in the same manner and provides substantially the same results as a composition made in accordance with the claims of the patent.

To paraphrase a statement made by Judge Jackson, the mechanical method of these compositions are similar and they are identical in operation and produce the same kind of weld.

■ There may be some superiority in defendants' fluxes, which results in additional tensile strength to their weld or which permits their weld to be unaffected by mill scale or oil. But if there is, it would probably be caused by ingredients added which would not affect plaintiff's disclosure. Addition of other ingredients to those claims, does not void infringement if the essential character of the compound remains the same, as it does in this case.

The defendants claim that their fluxes do not infringe on the plaintiff's claims; that the heart of plaintiff's invention is the claims and they rely upon the rule set forth by Judge Jackson that, "It is the claim which measures the grant to the patentee."

■ There is no doubt of the law that a patent cannot be extended or enlarged by the specifications, but they can explain the claims and the claims should be read in the light of the specifications. The Circuit Court of Appeals appears to consider all the statements in plaintiff's application as being specifications.

■ "The claims of a patent are not insular, but are integral parts of the patent, and the language of the claims must be construed in the light of, and as parts of, one entire instrument. * *

"The claims of a patent are not to be construed with legalistic rigidity. They are addressed to those skilled in the art, and are entitled to a fair and reasonable interpretation, such as will vitalize the grant, and to a reasonable flexibility of interpretation. The claims are to be read or interpreted in the light of the entire disclosure of the patent, * * not literally in vacuo; the verbiage of the patent should be considered in ascertaining the scope and purview of the claim. * * *"

Vol. 69 C.J.S., Patents, § 204, page 675.

Defendants also claim that their fluxes consist almost wholly of unreacted oxides plus silica or quartz; that they are composed of an acid component, namely quartz, and a basic component, manganese oxide. And that the plaintiff had sought to patent by claims in the patent office a composition broad enough to cover these components. It later abandoned these claims and the defendants maintain that this creates an estoppel.

It is unnecessary to discuss these questions as I am satisfied the defendants' fluxes are composed of substantially the same ingredients as those set out in the claims of the plaintiff's patent.

The materials have been completely reacted by the kiln treatment.

It must be conceded that the defendant Lincoln Electric Company has since 1945 been improving their welds from time to time; and have endeavored to escape a charge of violation of this court's injunction. They have not been so foolish as to intentionally use the materials defined in the claims of the patent in suit, but by trial and error, they have arrived at the same result, and either intentionally or unintentionally, have done so by the use of the kiln which changed the starting materials to silicates.

There is a possibility, of course, that the defendants in the improvement of their weld have used elements which would result exactly the same as do the materials used in keeping with the claims of the patent. It is more probable as testified to by the plaintiff's experts that the application and treatment of heat to the starting materials caused such materials to be reacted and form silicates.

Or to put it another way: the heating and treatment of the starting materials as practiced by the Lincoln Electric Company results in producing, either intentionally or unintentionally, what otherwise may have been substantial changes in the materials used to elements that are or that have the same chemical values; and produce the same or substantially the same result in the same way and manner as do the materials described or referred to in the claims of plaintiff's patent.

The main contention of the defendants is that their fluxes do not contain a major proportion of alkaline earth metal silicate. It would be a little difficult from the testimony of the experts to come to a positive decision as to whether defendants' composition did contain a major proportion of silicate as the experts are somewhat divided on the question. All of the experts for the plaintiff and at least some of the experts for the defendants admit that there are some silicates of a kind referred to in the claims of the patent appearing in defendant's product in some appreciable degree, but differ as to the amount. There is sufficient silicate in the defendants' fluxes to accomplish the desired results, and I am abidingly satisfied that the fluxes of the defendants, to wit: Lincolnweld 770, 780, 760 and 840 are substantially the same with respect to silicates as required by the patent; that such fluxes infringe because the elements in the compositions are first, substantially the same thing as required by the Jones et al. patent; and second, operate substantially the same way; and third, they substantially accomplish the same results.

I cannot see or go along with the defendants in their claim that the chemical reactions between the components of the welding composition are not completed before it is sold as a weld. While not conclusive in its importance, it seems to me clear that either by heating the base materials or by heating them in the kiln the basic constituents are reacted.

I have examined carefully the other defenses plead and argued in the case and find them either not established by a preponderance of the evidence or unconvincing.

■ Defendant Lincoln Electric Company has infringed the plaintiff's patent, by the manufacture and sale of Lincolnweld 770 since July, 1948; Lincolnweld 780 since March, 1949; Lincolnweld 760 since June 1950; and Lincolnweld 840 since the early part of 1951, and that they infringe upon Jones et al. patent and since July 10, 1950, are in violation of the Court's injunction hereinbefore referred to.

The other defendants, other than Mr. Lincoln, have contributed to the infringment.

■ I also find that this violation of the injunction was done with the full knowledge of the contents of the injunction and was either intentionally done or with disregard of the rights of the owner of the patent.

The defendants in relying upon the opinion of their counsel, it seems to me, should have known that the patent was much broader than the claims standing alone might indicate. Also that common sense should have told them that they were getting too close to the patent and should have discovered that their fluxes were substantially the same in their use and results, as those owned by the plaintiff.

■ The question of the financial responsibility of the defendants in this case is difficult to determine for if there is any evidence in the record as to the financial status of the defendant companies, it has not been pointed out to me. However, the defendants' counsel in argument did state that the Lincoln Company had developed into a large one and now had one thousand employees. It seems to me there is sufficient evidence that the business is substantial, and I find that there should be a judgment for the plaintiff against the defendants Lincoln Electric Company and the Graver Tank & Mfg. Co., Inc. and the Graver Tank and Mfg. Corp. in an aggregate sum of $25,000, which will be divided as $15,000 against the Lincoln Electric Company and $5,000 each as against the other two companies.

■ Plaintiff is also entitled to an attorney fee. Such attorney fee is allowable only to one attorney and a judgment

will therefore be authorized in favor of the principal attorney for the plaintiff, John T. Cahill, in an amount of $5,000, which he can distribute among his associate counsel as he may deem fit. The penalty should also include the costs of the case to be taxed as a judgment against the defendants other than James Finney Lincoln as I do not find sufficient evidence as to warrant holding him. If he is guilty at all, it is as an officer and employee of the Lincoln Electric Company and there is nothing in the evidence to distinguish any act or conduct on his part with reference to the fluxes as an individual. I therefore find in his favor in his case, which will be dismissed as to him.

The attorneys for the plaintiff may prepare findings of fact, and conclusions of law not inconsistent with this opinion, together with a form of decree to be entered. They will send a copy thereof to each of the defendants, or an attorney of record for the defendants, at least three days before the presenting of the findings of fact, conclusions of law and decree, which shall be presented to the trial judge in open court in Hammond, Indiana, on December 10, 1951, at 10:00 a. m.

The defendants' motion to dismiss is overruled.

To each and all of the statements made herein the defendants except.