In the Matter of the APPLICATION of Bruno BLASER, Hans-Gunther Germscheid and Karl-Heinz Worms.

Patent Appeal No. 76–694.

United States Court of Customs and Patent Appeals.

June 9, 1977.

Nelson Littell, Jr., New York City, attorney of record, for appellants; Charles A. Muserlian, New York City, of counsel.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents; Henry W. Tarring, II, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Judges, and KASHIWA, Associate Judge, United States Court of Claims.

KASHIWA, Judge.[1]

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board), adhered to on reconsideration, affirming the examiner's rejection of claims 1, 2, and 4–12, which are all the claims in application serial No. 869,437, filed September 25, 1969, entitled "Process for the Manufacture of Acylation Products of Phosphorous Acid." We affirm in part and reverse in part.

*The Invention*

Appellants' invention is directed to a process for preparing acylation products of phosphorous acid having at least two phosphorous atoms in their molecules, which process comprises mixing phosphorus trichloride with a mixture of carboxylic acid and water under specified reaction conditions. The claims on appeal are reproduced below, with our emphasis supplied to italicize disputed limitations:

1. A process for the manufacture of acylation products of a phosphorous acid having at least two phosphorous atoms in their molecules, which consists essentially of the steps of mixing one mol of phosphorus trichloride with from 2.5 to 3 mols of a mixture of carboxylic acid plus water, said acid being selected from the group consisting of an aliphatic monocarboxylic acid having 2 to 12 carbon atoms and benzoic acid; *the share of said water in said mixture being from 1.2 to 1.5 mols*; at a temperature up to 80°C; heating the reaction blend thus obtained, after completing of said mixing to 100°C to 160°C and recovering said acylation products.

2. The process as defined in Claim 1, wherein said temperature of 100°C to 160°C is held for 1 to 6 hours.

4. The process as defined in claim 1 wherein said heated blend is allowed to cool, and the acylation product precipitated therefrom.

5. The process as defined in claim 1 wherein said trichloride is introduced into said mixture of acid and water.

6. The process as defined in claim 1, wherein said water is added into a mixture of said chloride with said acid.

7. A process for the manufacture of acylation products of a phosphorous acid having at least two phosphorus atoms in their molecules, which consists essentially of the steps of mixing one mol of phos-

1. Judge of the United States Court of Claims sitting by designation pursuant to 28 U.S.C. 293(a).

phorus trichloride with from 2.5 to 3 mols of a mixture of carboxylic acid plus water, said acid being selected from the group consisting of an aliphatic monocarboxylic acid having 2 to 12 carbon atoms and benzoic acid; *the share of said water in said mixture being from 0.6 to 1.6 mols*; at a temperature up to 80°C; *heating the reaction blend thus obtained*, after completing of said mixing *to 80°C to 200°C* and recovering said acylation products.

8. The process as defined in Claim 7, wherein said temperature of 80°C to 200°C is held for 1 to 6 hours.

9. The process as defined in Claim 7, wherein said heated blend is allowed to cool, and the acylation product precipitated therefrom.

10. The process as defined in Claim 7 wherein said trichloride is introduced into said mixture of acid and water.

11. The process as defined in Claim 7 wherein said water is added into a mixture of said chloride with said acid.

12. The process of Claim 7, *wherein said share of said water in said mixture is from 1.2 to 1.6 mols.*

### The Rejections

This case is one of a series of continuing applications, the first filed on April 8, 1965,

which applications are continuations-in-part of great-grandparent application serial No. 159,159 (hereinafter SN 159,159).[2] In SN 159,159 appellants claimed the benefit of their German priority application which subsequently matured into a German patent, the sole reference relied upon by the examiner in this case:

German Patent 1,148,235 May 9, 1963 (Blaser et al.)

Since the German patent has an effective date as a reference (May 9, 1963) more than one year prior to the filing date of the first continuation-in-part application (April 8, 1965), the patent constitutes a statutory bar against the present case under 35 U.S.C. 102(b)[3] unless appellants are entitled to the filing date of SN 159,159 under the provisions of 35 U.S.C. 120 and 35 U.S.C. 112, para. 1.[4]

The board found inadequate support in the present case for the limitation "1.2 to 1.5 mols," added by amendment to claims 1, 2, and 4-6. Accordingly, the board decided that this limitation constitutes new matter and that appellants are not entitled to the benefit of the filing date of SN 159,159 for claims 1, 2, and 4-6. Furthermore, the board found inadequate support in SN 159,-159 for the limitations "0.6 to 1.6 mols," "1.2 to 1.6 mols," and "80°C to 200°C" in present claims 7-12. Accordingly, the

2. The present case is a continuation of application serial No. 703,789, filed February 5, 1968, now abandoned, which is a continuation of application serial No. 446,742, filed April 8, 1965, now abandoned, which, in turn, is a continuation-in-part of application serial No. 159,-159, filed December 13, 1961, now abandoned.

3. 35 U.S.C. 102(b) reads as follows:

§ 102. *Conditions for patentability; novelty and loss of right to patent.* A person shall be entitled to a patent unless—
* * * * * *
(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States * * *.

4. 35 U.S.C. 120 reads as follows:

§ 120. *Benefit of earlier filing date in the United States.* An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of

this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

35 U.S.C. 112, para. 1, reads:

§ 112. *Specification.* The specification shall contain *a written description of the invention,* and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most clearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention. [Our emphasis.]

board decided that appellants are not entitled to the benefit of the filing date of SN 159,159 for claims 7–12. In sum, the earliest date to which appellants were entitled under the board's holding was that of the first continuation-in-part application, serial No. 446,742, filed April 8, 1965. Since the German patent has an effective date of May 9, 1963 and discloses several specific examples which meet every limitation of each claim on appeal, the board affirmed the examiner's rejection of all the claims under 35 U.S.C. 102(b). Since the limitation "1.2 to 1.5 mols" was added by amendment to present claims 1, 2, and 4–6, the board also affirmed the examiner's rejection of these claims as drawn to new matter, 35 U.S.C. 132.[5]

### Issue

The dispositive issue is whether appellants have complied with 35 U.S.C. 112, para. 1, by providing an adequate description in the present case and in SN 159,159 of specific limitations occurring in the claims on appeal.

### OPINION

*Claims 1, 2, and 4–6.*

The sole disputed limitation in these claims is "the share of said water in said mixture [of carboxylic acid and water] being from 1.2 to 1.5 mols." Appellants urge that the range of 1.2 to 1.5, although not expressly set forth in SN 159,159, was supported therein as a preferred range in working examples 1–6. On this point the board, in its modified opinion on petition for reconsideration, agreed with appellants. In the present case appellants have added new examples 1 and 2, which cover a range

of 0.6 to 1.6 mols water, while examples 3–8 are virtually identical to the previous examples 1–6 in SN 159,159. The board found that there is no basis in the present case, when considering all the relevant examples, for carving out specific examples 3–8 for the purpose of supporting the range of 1.2 to 1.5.

The function of the description requirement, however, is to ensure that the applicant had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him. *In re Wertheim*, 541 F.2d 257, 262, 191 U.S.P.Q. 90, 96 (Cust. & Pat.App.1976). Here, the board has agreed that in SN 159,159 appellants described as their invention a process using 1.2 to 1.5 mols water. Nevertheless, the board found that upon filing the present application with added examples 1 and 2 appellants in effect lost possession of this subject matter, i.e., that the present application did not describe the same invention as that disclosed in SN 159,-159. We believe that this position is manifestly unsound. As a factual matter, we believe that persons skilled in the art would consider processes employing 1.2 to 1.5 mols water as part of appellants' invention and would have been led by both SN 159,159 and the present case, as filed, so to conclude. See *In re Wertheim*, supra, 541 F.2d at 265, 191 U.S.P.Q. at 98. Since the range in question was adequately described in SN 159,159 and in the present case as filed, this claim limitation, added by amendment, does not constitute new matter and appellants are entitled to the benefit of the filing date of SN 159,159 for claims 1, 2, and 4–6. Accordingly, we reverse the rejection of these claims under 35 U.S.C. 102(b) and 35 U.S.C. 132.[6]

---

**5.** 35 U.S.C. 132 reads as follows:

§ 132. *Notice of rejection; Reexamination.* Whenever, on examination, any claim for a patent is rejected, or any objection or requirement made, the Commissioner shall notify the applicant thereof, stating the reasons for such rejection, or objection or requirement, together with such information and references as may be useful in judging of the propriety of continuing the prosecution of his application; and if after receiving such notice, the applicant persists

in his claim for a patent, with or without amendment, the application shall be reexamined. No amendment shall introduce new matter into the disclosure of the invention.

**6.** We note in passing that the PTO does not contend that there is a gap in the continuity of disclosure of appellants' examples which span the range 1.2 to 1.5. We therefore take as unchallenged the fact that such examples appear in each of the chain of cases filed by appellants.

*Claims 7–12.*

■ Claims 7–11 recite "the share of said water in said mixture being from 0.6 to 1.6 mols." In SN 159,159 appellants disclosed that, whereas carboxylic acid previously had been used alone, it was now feasible to replace a part of the carboxylic acid with water, where the share of the water may be up to 1.6 mols. No lower amount of water was disclosed, except that, of course, some water must be present. In the present application, appellants disclose the share of water as 0.6 mols to 1.6 mols and add examples 1 and 2 which cover this range. Appellants have discovered that "reduction of the amount of water used [below 0.6 mols] renders the process unusable in practice owing to the greatly prolonged reaction times."

Appellants urge that the lower limit of 0.6 mols water is readily ascertainable from the disclosure of SN 159,159. Given this disclosure, say appellants, it would have been simple for one skilled in the art to run a series of experiments using varied amounts of water, such as examples 1 and 2 in the present case, to determine that the reaction time increases greatly when the amount of water decreases below 0.6 mols. However, the flaw in this argument is that enablement and obviousness are not the issues; description of the invention is. That a person skilled in the art, given SN 159,159, might proceed to run a series of experiments and derive a lower limit of 0.6 mols is not a sufficient indication to that person that 0.6 is described as a parameter of appellants' process. See *In re Winkhaus*, 527 F.2d 637, 188 U.S.P.Q. 129 (Cust. & Pat.App.1975). After the filing date of SN 159,159, appellants themselves disclosed a series of experiments which demonstrate that reduction of the amount of water below 0.6 mols renders their process unusable in practice due to greatly prolonged reaction times. It follows that appellants are not entitled to the benefit of this filing date for claims 7–11 on appeal, which recite 0.6 mols as the lower limit of water used. See *In re Wertheim,* supra, 541 F.2d at 264–65, 191 U.S.P.Q. at 98. Accordingly, we affirm the rejection of these claims under 35 U.S.C. 102(b).

Claims 7–12 recite "heating the reaction blend thus obtained, after completing of said mixing to 80°C to 200°C and recovering said acylation products." In SN 159,159 appellants disclosed initially mixing the starting materials at a temperature up to 80°C and heating the reaction blend thus obtained to temperatures between 60°C and 200°C. The question presented is whether the disclosed range of 60°C to 200°C in SN 159,159 supports the recitation of 80°C to 200°C in the claims on appeal.

■ Appellants rely on the rationale of *In re Wertheim*, supra, as "clearly applicable here." Appellants urge that if a disclosure of 25–60% solids content taught those skilled in the art that 35–60% was part of the invention in *Wertheim*, although the latter range was not expressly mentioned therein, then appellants' disclosure of 60°C to 200°C in SN 159,159 would likewise teach 80°C to 200°c as part of appellants' invention. We agree with appellants that *Wertheim* is controlling on this point. We further note that in SN 159,159 appellants disclosed initially mixing the starting materials at a temperature up to 80°C prior to heating the reaction blend thus obtained to a maximum temperature of 200°C. We conclude that SN 159,159 adequately supports the limitation "80°C to 200°C" as recited in claims 7–12.

■ Claim 12 recites "said share of said water in said mixture is from 1.2 to 1.6 mols." In SN 159,159 the upper limit of 1.6 mols was expressly disclosed and examples 1–6 therein encompassed the range of 1.2 to 1.5 mols. As a factual matter, persons skilled in the art would consider processes employing 1.2 to 1.6 mols water as part of appellants' invention and would have been led by SN 159,159 so to conclude. See the discussion of claims 1, 2, and 4–6, supra. Since the "80°C to 200°C" and "1.2 to 1.6 mols" limitations were adequately described in SN 159,159, appellants are entitled to the benefit of the filing date of SN 159,159 for

claim 12. Accordingly, we reverse the rejection of this claim under 35 U.S.C. 102(b).[7]

In conclusion, we *reverse* the rejection of claims 1, 2, 4–6, and 12 and we *affirm* the rejection of claims 7–11.

*MODIFIED.*

MARKEY, Chief Judge, dissenting in part, with whom BALDWIN, Judge, joins.

With all due deference, I dissent from affirmance of the rejection of claims 7–11. The majority's treatment of these claims is, in my view, in direct conflict with its treatment of the others. The disclosure in SN 159,159 is that of a range, extending from *some* water (say 0.1 mols) to 1.6 mols, thus encompassing 0.6–1.6 mols. In my view, "some" describes 0.6. Appellants' later disclosure is that a quantity of water below 0.6 mols will work, but more slowly. Appellants are merely claiming less than they would have had a right to claim in SN 159,159, and have properly acted to limit their present disclosure and claims to the more practical parameters of 0.6–1.6 mols. Such "speaking up" is to be encouraged. We should not punish honesty.

---

7. The PTO contends only that SN 159,159 does not support the "80°C to 200°C" and "1.2 to 1.6 mols" limitations. We therefore take as unchallenged the fact that these limitations are supported by each of the other cases filed by appellants.