**In the Matter of RIPLEY OIL COMPANY, INC., Debtor.**

**Bankruptcy No. 1–83–02996.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 20, 1987.

Richard D. Nelson, Cincinnati, Ohio, for Trustee.

David J. Frey, Batavia, Ohio, for creditor.

*ORDER*

RANDALL J. NEWSOME, Bankruptcy Judge.

This Chapter 7 case is before the Court pursuant to a motion to abandon filed by Citizens National Bank of Ripley, Ohio (hereafter "Citizens National") and an objection to the motion filed by the trustee. The pertinent facts surrounding this dispute are uncontroverted. The debtor was a retail distributor of petroleum products located in a rural area of southern Ohio. The goods which are the subject of this dispute are some 520 oil tanks and pumps

which debtor loaned to its farm customers as storage facilities for the fuel debtor sold them. In order to obtain a storage tank, the customer was usually required to sign an "equipment agreement" which in essence stated that the tank was being loaned to the "borrower," that the tank remained the personal property of the debtor, and that it could be removed by the debtor upon termination of the agreement or at any other time the debtor saw fit.

■ On September 14, 1983 Citizens National loaned the debtor $60,000 and obtained a security interest on "all accounts receivable and inventory" of the debtor. Citizens National asserts that the oil tanks constitute "inventory" and accordingly that the trustee should abandon them under 11 U.S.C. § 554. The trustee counters that they are equipment, and thus not subject to Citizens National's security interest.

The resolution of this conflict turns on an interpretation of Ohio Revised Code § 1309.07(B) and (D) (U.C.C. § 9–109(2) and (4)). Those provisions state that goods are:
(B) "equipment" if they are used or bought for use primarily in business ... or if the goods are not included in the definition of inventory, farm products, or consumer goods;

\* \* \* \* \* \*

(D) "inventory" if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in progress, or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment.

The official comments to the statute further refine these mutually-exclusive definitions:
3. The principal test to determine whether goods are inventory is that they are held for immediate or ultimate sale. Implicit in the definition is the criterion that the prospective sale is in the ordinary course of business.... Goods to be furnished under a contract of service are inventory even though the arrangement under which they are furnished is not

technically a sale.... In general it may be said that goods used in a business are equipment when they are fixed assets or have, as identifiable units, a relatively long period of use; but are inventory, even though not held for sale, if they are used up or consumed in a short period of time in the production of some end product.

O.R.C. § 1309.07, Official Comment 3.

Our review of the facts and the essential elements of the statute leads us to conclude that the tanks fall within the category of equipment, not inventory. The debtor never held these goods for sale, either in the ordinary course of business or otherwise, since no title was passed from a seller to a buyer for a price. Ohio Revised Code § 1302.01(A)(11). To the contrary, both the debtor and the customers intended that title to the tanks would remain in the debtor.

■ Contrary to Citizens National's assertions, it is equally apparent that the arrangement between the debtor and its customers did not have the essential attributes of a lease. The customer did not have exclusive rights to dominion and control of the tanks, there was no definite term of possession, and there was no rental or other cash payment made by the customers in exchange for use and possession. *Compare, Auto Acetylene Light Co. v. Prest-O-Lite Co., Inc.,* 276 F. 537, 543 (6th Cir.1921) (acetylene tanks not "leased" to customers) *with, Kelling Nut Co. v. Barrow,* 98 Ohio App. 531, 130 N.E.2d 353, 58 Ohio Op. 73, 75 (1954) (nut machine was leased, not loaned, to original transferee); *see also, Freedom Nat'l Bank v. Northern Illinois Corp.,* 202 F.2d 601, 603–604 (7th Cir.1953).

The relationship between the debtor and its customers is most properly characterized as a bailment for the mutual benefit of the parties. The customer obviously benefitted from having the tank loaned to him by the debtor, because it obviated the need to buy one; the benefit to the debtor was equally obvious, because it facilitated the sale of oil. *Cf., Hotels Statler Co., Inc. v. Safier,* 103 Ohio St. 638, 134 N.E. 460 (1921).

Having found that the tanks were not held for sale or lease, we are left with the question of whether they were "furnished under contracts of service." The few cases which have interpreted this phrase seem to focus on the word "furnish," and inquire into the degree to which the customer had a right of control over the goods. *See, In re LeMieux*, 362 F.Supp. 1040, 1042 (D.Minn.1973); *In re Video Group, Inc.*, 1 B.R. 624, 627–628 (Bankr.E.D.Mich.1979). In our view, such a construction puts too much emphasis on who has possession of the goods. As the official comments indicate, this phrase was added to make it clear that the dichotomy between contracts of sale and contracts of service and the applicability of Article 2 of the U.C.C. are not relevant to the appropriate inquiry under § 1309.07. Rather, it is the nature of the debtor's business, the intent of the parties, and the purpose of the goods themselves which are determinative. *In re Benton Trucking Service, Inc.*, 21 B.R. 574, 578 (Bankr.E.D.Mich.1982).

The nature of the debtor's business was not to loan oil tanks to customers, but to sell oil to them. The tanks enabled the debtor to sell its product, but did not generate cash themselves. They were fixed assets which were intended for long use. Many of them have remained in the possession of customers for as long as twenty years. They constituted identifiable units which expanded in number as the business grew and presumably were disposed of only when they were obsolete. In other words, they have all of the classic indicia of equipment, and we find them to be such. *See, Auto Acetylene Light Co. v. Prest-O-Lite Co., Inc., supra*, at 543; *In re Hughes*, 58 B.R. 452, 453, n. 2 (Bankr.E.D. Tenn.1986).

Accordingly, for the above-stated reasons, the motion of Citizens National is hereby DENIED.

IT IS SO ORDERED.